1  William A. Delgado (Bar No. 222666)
2  wdelgado@willenken.com
   WILLENKEN WILSON LOH & DELGADO LLP
3  707 Wilshire Blvd., Suite 3850
4  Los Angeles, California 90017
   Telephone:  (213) 955-9240
5  Facsimile:   (213) 955-9250

6  Attorneys for Defendant
7  KWIKSET CORPORATION

```
                                 FILED
                      CLERK, U.S. DISTRICT COURT

                           DEC - 2 2014

                      CENTRAL DISTRICT OF CALIFORNIA
                      BY                       DEPUTY
```

8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10

11 | HID GLOBAL CORPORATION, a          Case No.: SACV-14-00947-CJC-DFMx
12 | Delaware corporation; and ASSA
   | ABLOY AB, a Swedish Limited        [PROPOSED] ORDER
13 | Liability Company,                 GOVERNING THE PRODUCTION
14 |                                    OF ELECTRONICALLY STORED
                                        INFORMATION AND OTHER
15 |                 Plaintiffs,        DOCUMENTS
16 | v.
17 |
18 | KWIKSET CORPORATION, a
   | Delaware corporation; and DOES 1
19 | through 10, inclusive,
20 |                 Defendants.
21
22
23
24
25
26
27
28

---

1   Based on the request of Plaintiffs HID Global, Inc. and ASSA Abloy AB
2   and Defendant Kwikset Corporation (all collectively the "Parties"), the Court
3   enters the following order regarding the protocol governing the production of
4   electronically stored information ("ESI") and other documents.

5   **I.     Format for Production.**
6       The following guidelines will govern the production of documents,
7   including ESI, unless the Parties agree or the Court orders otherwise. The purpose
8   of these guidelines is to facilitate the just, speedy, and inexpensive conduct of
9   discovery involving ESI in this case, and to promote, whenever possible, the
10  resolution of disputes regarding the discovery of ESI without Court intervention.

11      **A.    Definitions.**
12          **1.**    "Metadata" means: (i) information embedded in a Native File
13                    that is not ordinarily viewable or printable from the application
14                    that generated, edited, or modified such Native File; and (ii)
15                    information generated automatically by the operation of a
16                    computer or other information technology system when a
17                    Native File is created, modified, transmitted, deleted or
18                    otherwise manipulated by a user of such system. Metadata is a
19                    subset of ESI.
20          **2.**    "Native Fomat" means ESI in the electronic format of the
21                    application in which such ESI is normally created, viewed
22                    and/or modified.
23          **3.**    "Static Image(s)" means a representation of ESI produced by
24                    converting a Native File into a standard image format capable
25                    of being viewed and printed on standard computer systems.
26          **4.**    "Load file" means an ancillary file containing searchable
27                    textual content which is linked to a Static Image.
28

---

**ORDER GOVERNING PRODUCTION OF ESI**

1

5.      "Extracted text" means the contents or body of the record reduced to ASCII text as Metadata.

**B.**      **Format of Production of ESI.**

1.      <u>Format of Production</u>. Except as otherwise provided herein, all documents that originally existed in electronic or hard-copy form that are produced in these proceedings shall be produced in electronic image form in the manner provided herein. Documents that present imaging or formatting problems shall be promptly identified and the Parties shall meet and confer to attempt to resolve the problems.

2.      <u>Load Files</u>. In the absence of contrary agreement of the Parties or Order of Court, a Static Image should be provided in Tagged Image File Format (TIFF, or .TIF files). Load files shall be created in the process of converting Native Files to Static Images, and load files should be produced in Concordance *.dat, and Summation *.DII formats, with an Opticon *.opt image cross-reference file, together with Static Images. The image filenames shall match the Bates Number assigned to the image.

3.      <u>Metadata</u>. ESI will be produced to the Requesting Party as Static Images together with the extracted text portion of the Metadata. The Parties agree to production in native format for certain file types listed in I.B.16. For e-mails, such extracted text portion of the Metadata shall include but not be limited to: Message ID or MD5 Hash, Author, Recipient, BCC, CC, Subject, Sent Date, Sent Time, Date Rec'd, Time Rec'd, BegDoc, EndDoc, BegAttach, EndAttach, Attachment Name, and Folder Name. For other electronic documents, such

extracted text portion of the Metadata shall include but not be limited to: Doc Id (MD5 Hash), Media, Author, Last Author, Notes, BegDoc, EndDoc, BegAttach, EndAttach, Subject, Title, Date Created, Time Created, Last Saved/Modified Date, Last Saved/Modified Time, Comments, File Name, File Path, and File Type. When the Static Image is produced, the Producing Party should maintain a separate file as a Native File and, in that separate file, it should not modify the Native File in a manner that materially changes the file and the Metadata.

4.   <u>Document Unitization</u>. If a document is more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. For documents that contain fixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of documents in a document collection (e.g., cover letter and enclosures, email and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process. Such information shall be produced in the load file in a manner to enable the relationship among documents in a document collection to be reconstituted by the Receiving Party in commercially available document management software, such as Concordance and Summation.

5.   <u>Color</u>. There is no obligation to produce documents in color in the first instance. If an original document contains color but was not produced in color, the parties shall meet and confer

regarding any reasonable requests for either the production of an original document for inspection and copying or production of a color image of the document.

6.   Duplicates. Where a single document custodian has more than one identical copy of a document (i.e., the documents are visually the same and contain the same electronic text), the Producing Party need only produce a single copy of that document. Notwithstanding the foregoing, duplicates shall not be removed from document collections (e.g., cover letter and enclosures, email and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) whereby removal of a document from a collection would create gaps in the review of documents in the collection; if a complete duplicate of a collection of documents exists in a given custodian's documents, the duplicate collection(s) may be removed from the production of documents for that custodian. Where multiple document custodians each possess their own copies of an identical document, the document shall be produced once for each custodian in possession of the document. The Parties will meet and confer as necessary regarding alternative means through which duplicate information will be provided, including providing a report indicating the Bates Number of the original document and the custodians for whom an identical copy of the document existed in their files, or the duplicate information will be produced as a Metadata field.

7.   Bates Numbering. Each page of a produced document shall have a legible, unique page identifier ("Bates Number")

electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable) and the Bates Number identified above. The confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.

8.    <u>File Naming Conventions</u>. Each page image file shall be named with the unique Bates Number of the page of document, followed by the extension ".TIF." In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

9.    <u>Production Media</u>. The Producing Party shall produce documents on CD·ROM, DVD, external hard drive, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall identify, the name of the Producing Party, and the Bates ranges included on the Production Media and whether it contains confidential information. Additional information concerning the production, including the case number of the case in which the documents are being produced, the production date, and the types of materials included on the Production Media (e.g., "Documents," "OCR Text," "Objective Coding," etc.) may be provided in an accompanying letter.

**10.** OCR/Extracted Text. The Producing Party shall produce corresponding Optical Character Recognition (OCR) text files for all hard-copy documents and any electronic documents that require redaction prior to production. For documents that exist natively in electronic format that have not been redacted and that are produced as images, the Producing Party shall produce extracted text files reflecting the full text that has been electronically extracted from the original, native electronic files. The OCR and extracted text files shall be produced in ASCII text format and shall be labeled and produced on Production Media in accordance with the provisions set forth above. These text files will be named with the unique Bates Number of the first page of the corresponding document followed by the extension ".txt." The OCR and extracted text files shall be produced in a manner suitable for importing the information into commercially available document management or litigation support software such as Summation or Concordance.

**11.** Original Documents. For all documents produced in this proceeding, the Producing Party shall retain the original hard-copy or electronic documents in their native format (together with the means to access, retrieve, and view such documents), where possible. The Producing Party shall make reasonable efforts to maintain the original native electronic source documents in a manner so as to preserve the Metadata associated with these electronic materials in the event review of such Metadata becomes necessary. Subject to preservation of appropriate privileges and other protections of the Producing

Party's information from production in accordance with applicable law, the Producing Party shall, upon reasonable request after any necessary meet and confer, make originals of any produced document available for inspection at a mutually agreeable time and place by the Requesting Party. However, the foregoing provision shall not be interpreted to entitle the Receiving Party to a right of direct access to the Producing Party's databases or document management systems.

12. <u>Production of Other Electronic Documents</u>. Should any document or ESI not be amenable to production in the manner set forth in this Order, the Parties shall meet and confer to agree on the form of any production of such electronic documents or ESI.

13. <u>Use of Documents</u>. When documents produced in accordance with this Order are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents shall be the copy used. OCR or extracted text shall not be used in any Proceeding as a substitute for the image of any document.

14. <u>Privilege Logs</u>. The Parties will produce privilege logs in Excel format or a similar electronic format that allows text searching and organization of data. A Party will produce a privilege log within 90 days after the production of documents for which privilege is asserted to apply.

15. <u>Paper Format</u>. Upon agreement of the Parties, however, ESI may be produced in paper format in lieu of production in electronic format where such production would be more practical or cost efficient.

16.     <u>Native Files of Complex Documents</u>. All spreadsheets, databases and/or electronic files created in other dynamic data systems, including without limitation executable programs, existing in native format ("Complex Documents") shall be produced in native format. Complex Documents that present formatting or other problems shall be promptly identified; the parties shall meet and confer to attempt to resolve the problems. Complex documents must be produced with all functions and formulae unlocked. Subject to the requirements of this paragraph, Complex Documents will be numbered and produced in the same manner as described above to the extent possible. If certain Complex Documents are not easily Bates-numbered, the parties shall meet and confer to discuss alternative methods for tracking or labeling produced Complex Documents.

C.     **Objections to Production of ESI**

1.     A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost and may object to discovery on that basis.

2.     Prior to the filing of a motion to compel or a motion for protective order related to any objection based on I.(C)(1), the parties shall meet and confer in good faith. At the meet and confer conference, the party making the objection will identify the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested production would impose an undue burden or is unreasonably costly, and afford the Requesting Party fourteen (14) calendar

1    days to propose an alternative means of compliance with the

2    request, including payment of all or part of the costs of

3    retrieving the information.

4    **II.    Scope**

5        This Order shall apply to all Parties that are required to make any production

6    in this action pursuant to Fed. R. Civ. P. 26 and 34 and/or any other applicable

7    rules. This Order shall continue in full force and effect until further order of the

8    Court or until this litigation is terminated by a final judgment.

9          **IT IS SO ORDERED.**

10

11   Dated:   12-2-2014

12                   Douglas F. McCormick
                     United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28